## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Matthew Carango and Fred Heidarpour, *on their own behalf and on behalf of all others similarly situated*,<br><br>                    Plaintiffs,<br>v.<br><br>The Altitude Group, LLC d/b/a Core Home Security, LLC, *a Florida Limited Liability Company*,<br><br>                    Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

For this Class Action Complaint, the Plaintiffs, Matthew Carango and Fred Heidarpour, by and through their undersigned counsel, pleading on their own behalf and on behalf of others similarly situated, states as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## INTRODUCTION

1. Plaintiffs Matthew Carango and Fred Heidarpour bring this Class Action Complaint against Defendant The Altitude Group, LLC, d/b/a Core Home Security, LLC ("CHS" or the "Defendant") to stop Defendant's serial violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA"). In violation of the TCPA, CHS makes unsolicited pre-recorded telemarketing calls to wireless and landline telephone users nationwide, including telephone users who've registered their numbers on the National Do Not Call List—all in an effort to market and sell alarm systems, products and related services.

2. Plaintiffs bring this action to stop Defendant's unsolicited telemarketing practices and to obtain redress, including statutory damages, costs, and reasonable attorneys' fees, for all persons injured by Defendant's conduct.

3. The Telephone Consumer Protection Act 47 U.S.C. § 227, et seq. ("TCPA") and its implementing regulations, 47 C.F.R. §64.1200, *et seq*. prohibit companies such as Defendant from placing calls using pre-recorded voice technology without first obtaining the recipient's prior express consent.

4. CHS has violated, and continues to violate, the TCPA and its regulations by placing pre-recorded telemarketing calls to wireless and landline telephone subscribers who have not expressly consented to the receipt of such calls.

5. Additionally, CHS makes repeated telemarketing calls to telephone users who've registered their numbers on the national Do Not Call Registry.

6. CHS markets and sells home security alarms and systems affiliated with Alarm.com. In an effort to get more customers for its alarm systems, CHS: (a) made pre-recorded telephone calls to the wireless telephones of Plaintiffs and other members of the alleged Classes without first obtaining express consent to do so, and (b) made multiple telemarketing calls to persons whose phone numbers had been registered on the National Do Not Call registry—all in violation of the TCPA.

7. The TCPA was enacted to protect consumers from unsolicited pre-recorded calls like those alleged in this Complaint.

8. By making the telephone calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls in

addition to a loss of value realized for the monies consumers paid to their wireless carriers for plans that include the receipt of such calls and messages. Furthermore, the calls interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendants also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes and data.

## PARTIES

9. Plaintiff Carango is a natural person over the age of eighteen (18) and a citizen of the State of Florida. Plaintiff Heidarpour is a natural person over the age of eighteen (18) and a citizen of the State of Arizona.

10. Defendant CHS is a Florida limited liability company with its principal place of business located at 949 Clint Moore Rd, Suite A, Boca Raton, FL.

## JURISDICTION & VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.*, a federal statute. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

12. This Court has personal jurisdiction over CHS because it is headquartered in this District, solicits significant business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint was directed to consumers in Florida, including this District.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant solicits a significant amount of consumer business within this District, and because a portion of the wrongful conduct giving rise to this case, including the making of the calls or the decision to make them, occurred in, was directed to, or emanated from this District.

## COMMON ALLEGATIONS OF FACT

14. CHS is a home security system company that offers Alarm.com home security alarm systems, and related products and services, to homeowners and others interested in home security.

15. Unfortunately for consumers, CHS casts its marketing net too wide. That is, in an attempt to promote its business and to generate leads for its security products, Defendant conducted (and continues to conduct) a wide scale telemarketing campaign that repeatedly makes unsolicited prerecorded calls to consumers' cellular/wireless telephones as well as landline telephones all without any prior express consent to make these calls.

16. Defendant places these calls using a pre-recorded voice without consumers' prior written express consent in violation of the TCPA.

17. At no time did Defendant obtain prior express consent from the Plaintiffs and the Class orally or in writing to receive pre-recorded calls.

19. In making the calls at issue in this Complaint, Defendant and/or its agent utilized a prerecorded voice or similar technology. In the alternative, Defendant used an automatic telephone dialing system. Specifically, the hardware and software used by Defendant and/or its agents has the capacity to store, produce, and/or dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment

includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously, without human intervention.

20. Defendant knowingly made, and continues to make, pre-recorded telemarketing calls without the prior express consent of the recipients.

21. Defendant also knowingly made, and continues to make, repeated calls to persons who have registered their telephone numbers on the national Do Not Call registry, a list of persons who have asked not to be called by telemarketers and that companies engaged in telemarketing of any kind must honor.

22. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF CARANGO

23. Plaintiff Carango is the subscriber to and customary user of the personal cellular telephone number ending in 8622.

24. Plaintiff registered his phone number ending in 8622 on the National Do Not Call registry on March 8, 2017.

25. On or around April 14, 2020 Plaintiff received multiple unsolicited pre-recorded voice calls from CHS that featured pre-recorded voice messages.

26. Plaintiff received a call on April 14, 2020 at 1:04 pm from phone number (332) 208-9483 that featured a pre-recorded voice message that said

:

*Hey this is Mark with home security promotions calling you about a free doorbell camera and alarm system. It's Tuesday, April 14th. We're in your area this week, so you can call me back toll free at 844-916-0448. Thanks.*

5

27. One minute later Plaintiff received a second call—on April 14, 2020 at 1:05 pm from phone number (331) 215-9750 that featured a pre-recorded voice message that said:

*Hey this is Mark with home security promotions calling you about a free doorbell camera and alarm system. It's Monday, April 13th. We're in your area this week, so you can call me back toll free at 844-916-0448. Thanks.*

28. Plaintiff received a third call 15 minutes later, at 1:20 pm from phone number (559) 336-1616 that featured a nearly identical pre-recorded voice that said:

*Hey this is Mark with home security promotions calling you about a free doorbell camera and alarm system. It's Monday, April 13th. We're in your area this week, so you can call me back toll free at 844-916-0448. Thanks.*

29. Carango called the 844-916-0448 number to discern who was bombarding his phone with three unsolicited, pre-recorded voice messages in 16 minutes.

30. Following this call, Carango received text messages from "Chad" who indicated the alarm company he had been conversing with was Core Home Security. Chad indicated that Core Home Security was powered by Alarm.com. He also provided Carango, via text, with the website www.corehomesecurity.com.

31. Plaintiff Carango never consented either orally or in writing to receive prerecorded calls from CHS or any of its affiliates or agents. Plaintiff never visited the Defendant's website, and he never provided his phone number or other contact information to Defendant. Plaintiff has neither shopped online for an alarm system nor entered his information on any website owned, operated, or controlled by Defendant. Plaintiff was renting at the time. Put simply, Defendant had no prior express consent to make the calls.

32. Plaintiff does not have a relationship with Defendant, has never provided his telephone number directly to Defendant, and has never requested that Defendant place calls to him to offer him CHS's or Alarm.com's services. Simply put, Plaintiff has never provided any form of prior express written or oral consent to Defendant to place prerecorded or autodialed calls to him, and he has no business relationship with Defendant.

33. Defendant was, and is, aware that the above described pre-recorded calls were made to consumers like Plaintiff who have not consented to receive them.

34. Defendant also made multiple calls to Plaintiff's phone despite the fact that Plaintiff's number had been registered on the National DNC registry for more than thirty (30) days.

35. By making and placing the unauthorized autodialed calls as alleged herein, CHS has caused consumers actual harm. This includes the aggravation, nuisance and invasions of privacy that result from the receipt of such calls in addition to the wear and tear on their telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, in the form of the diminished use, enjoyment, value, and utility of their telephone plans. Furthermore, Defendant made the calls knowing that they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access, their telephones, including all related data, software, and hardware components.

36. To redress these injuries, Plaintiff, on behalf of himself and Classes of similarly situated individuals, brings this suit under the TCPA, which prohibits unsolicited autodialed calls to telephones as well as repeated calls to persons who've registered their numbers on the National DNC registry.

37. On behalf of the Class, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited telemarketing and texting activities described throughout this Complaint and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF HEIDARPOUR

38. Plaintiff Heidarpour is the subscriber to and customary user of the residential landline telephone number ending in 5903. Heidarpour's number is on the National Do Not Call Registry.

39. On or around October 3, 2020, Heidarpour received a call from the number 480-878-4360. Plaintiff received multiple unsolicited pre-recorded voice calls from CHS that featured pre-recorded voice messages.

40. The call was placed using a sophisticated pre-recorded call system known as an "avatar" which is designed to trick customer into thinking they are speaking with a live agent. The system recognizes certain voice prompts and is able to respond to them with pre-recorded messages.

41. The avatar solicited Heidarpour to purchase home security products.

42. Heidarpour was eventually transferred to an operator named "Leon", who stated that he was with Defendant CHS.

43. Plaintiff Heidarpour never consented either orally or in writing to receive prerecorded calls from CHS or any of its affiliates or agents. Plaintiff never visited the Defendant's website, and he never provided his phone number or other contact information to Defendant. Plaintiff has neither shopped online for an alarm system nor entered his information

8

on any website owned, operated, or controlled by Defendant. Put simply, Defendant had no prior express consent to make the calls.

44. Plaintiff does not have a relationship with Defendant, has never provided his telephone number directly to Defendant, and has never requested that Defendant place calls to him to offer him CHS's or Alarm.com's services. Simply put, Plaintiff has never provided any form of prior express written or oral consent to Defendant to place prerecorded or autodialed calls to him, and he has no business relationship with Defendant.

45. Defendant was, and is, aware that the above described pre-recorded calls were made to consumers like Plaintiff who have not consented to receive them.

46. By making and placing the unauthorized autodialed calls as alleged herein, CHS has caused consumers actual harm. This includes the aggravation, nuisance and invasions of privacy that result from the receipt of such calls in addition to the wear and tear on their telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, in the form of the diminished use, enjoyment, value, and utility of their telephone plans. Furthermore, Defendant made the calls knowing that they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access, their telephones, including all related data, software, and hardware components.

47. To redress these injuries, Plaintiff, on behalf of himself and Classes of similarly situated individuals, brings this suit under the TCPA, which prohibits unsolicited autodialed calls to telephones as well as repeated calls to persons who've registered their numbers on the National DNC registry.

48. On behalf of the Class, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited telemarketing and texting activities described throughout this Complaint and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

49. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and three Classes defined as follows:

> **Pre-Recorded Voice Cellphone Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action to the date notice is sent to the Class: (1) Defendant, or a third person acting on behalf of Defendant, called, (2) on the person's wireless telephone; (3) using the same equipment that was used to call Carango; (4) for the purpose of marketing Alarm.com or other home security products and systems; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.
>
> **Pre-Recorded Voice Landline Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action to the date notice is sent to the Class: (1) Defendant, or a third person acting on behalf of Defendant, called, (2) on the person's residential landline telephone; (3) using the same equipment that was used to call Heidarpour; (4) for the purpose of marketing Alarm.com or other home security products and systems; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.
>
> **DNC Registry Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action to the date notice is sent to the Class: (1) Defendant, or a third person acting on behalf of Defendant, called at least twice, (2) on the person's wireless or landline telephone; (3) for the purpose of marketing Alarm.com or other home security products and systems; (4) where the telephone number called had been registered on the Do Not Call registry for at least thirty (30) days; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

50.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiffs anticipate the need to amend the class definitions following discovery regarding the contours of the classes.

51.     **Numerosity:** The exact number of members within the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed unsolicited pre-recorded voice calls to thousands of consumers who fall into the defined Classes. However, the true total number of members of the Class can be identified through reference to objective criteria, including Defendant's records and the DNC Registry.

52.     **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Classes in that Plaintiffs and the members of the Classes sustained identical legal harm and damages arising out of Defendant's uniform wrongful conduct.

53.     **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no actual conflicts or interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

54. **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant systematically made pre-recorded voice calls to individuals who did not previously provide Defendant with their prior express written consent to receive such phone calls;

    (c)    Whether Defendant systematically called numbers that had been registered on the National Do Not Call registry for at least thirty (30) days;

    (d)    Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

55. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for the individual Class members to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision

by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*
### (On behalf of Carango and the Pre-Recorded Voice Cellphone Class)

56. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

57. Defendant CHS, by and through its agents, made unsolicited and unwanted pre-recorded telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Class—without their prior express written consent—in an effort to generate leads for Alarm.com products and other products and services.

58. Defendant failed to obtain any prior express consent from Plaintiff or the other Pre-Recorded Class Members that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

59. Defendant made the telephone calls using equipment that featured a pre-recorded voice or pre-recorded voice technology. The messages were identical to each other and sent within minutes. Two of the messages sound exactly alike and state the wrong day (Monday the 13th when both messages were received on Tuesday the 14th). In the alternative, Defendant used an ATDS. Discovery will reveal the type of equipment used and its capacity. On information and belief, the calls were not individually dialed.

60. By making unsolicited telephone calls and sending unsolicited to Plaintiff and members of the Class's cellular telephones without prior express consent, and by utilizing a pre-recorded voice, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

61.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones.

62.     Under Section 227(b)(3)(B), Plaintiff and each member of the Pre-Recorded Voice Cellphone Class is entitled to, *inter alia*, a minimum of $500 in statutory damages for each such violation of the TCPA.

63.     Defendant's conduct was willful and knowing. As such, pursuant to Section 227(b)(3), the Court should award treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

64.     Given that Defendant's conduct is likely to recur or reoccur (as telemarketing represents a substantial part of its business), and to the extent damages fail to provide complete relief, the Court should also enjoin all such future unlawful use by Defendant of a prerecorded voice.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*
### (On behalf of Heidarpour and the Pre-Recorded Voice Landline Class)

65.     Heidarpour incorporates the foregoing allegations as if fully set forth herein.

66.     Defendant, in an effort to sell its products and services, made unsolicited and unwanted pre-recorded telephone calls to residential telephone numbers belonging to Plaintiff and other members of the Pre-recorded Voice Landline Class without first obtaining prior express consent.

67.     Such calls are also unlawful when placed to residential telephone subscribers under 47 U.S.C. § 227(b)(1)(B). Under the TCPA, it is unlawful:

> **to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice** to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes. . .

See 47 U.S.C. § 227(b)(1)(B). (emphasis added).

14

68. By making unsolicited telephone calls to Plaintiff and members of the Pre-recorded Voice Landline Class's residential telephones using a pre-recorded voice without first obtaining prior express consent, Defendant violated the TCPA.

69. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Pre-recorded Voice Landline Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their residential telephones, annoyance, and invasion of privacy, and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

70. In the event that the Court determines that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

**THIRD CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiffs and the DNC Registry Class)**

71. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72. 47 U.S.C. § 227(c) states that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action for relief.

73. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

74. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone

numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[1]

75. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be

---

[1] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

76. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, multiple, repeated telephone solicitations to telephone subscribers like the Plaintiff and the DNC Registry Class members who registered their respective cellphone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3), yet Defendant called them multiple times during any given 12-month period.

77. Defendant made multiple unsolicited telephones call to Plaintiff and the other members of the DNC Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and other members of the DNC Registry Class never provided any form of consent to receive telephone calls from Defendant, and Defendant does not have a current record of consent to place telemarketing calls to them. In short, Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

78. On information and belief, Defendant also failed to have a written policy, available upon demand, for maintaining a do-not-call list, failed to train its staff in the existence and use of any such do not call list, failed to provide called persons with the name of the person or entity on whose behalf the call is being made (instead providing a fake name "home security promotions"), and otherwise failed to incorporate the national Do Not Call Registry into its calling list.

79. At no time did Defendant procure express consent to call Plaintiff, the DNC Registry Class Members, or any other persons on the DNC Registry.

80. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Registry Class members suffered actual harm and, under 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

81. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Registry Class.

82. Given that Defendant's conduct is likely to recur or reoccur (as telemarketing represents a substantial part of its business), and to the extent damages fail to provide complete relief, the Court should also enjoin all such future unlawful telemarketing by Defendant to person's listed on the DNC Registry.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Matthew Carango and Fred Heidarpour, on behalf of themselves and the Class, prays for the following relief:

    A. An order certifying the Classes as defined above, appointing Plaintiffs as the representatives of the Classes and appointing his counsel as Class Counsel;

      B.      An award of statutory damages in the amount of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into two common funds for the benefit of the Plaintiffs and each Class;

      C.      An order declaring that Defendant's actions, as set out above, violate the TCPA and appropriate injunctive relief barring Defendant from using pre-recorded voice technology without prior express consent and from repeatedly calling numbers listed on the Do Not Call Registry;

      D.      Treble damages in the event Defendant's violations are found to have been willful or knowing;

      E.      An award of pre- and post-judgment interest;

      F.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

      G.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs demand a jury on all claims.

Dated: January 25, 2021

                                    By:  /s/ Ryan S. Shipp
                                    One of Plaintiff's Attorneys

                                    Ryan S. Shipp
                                    Florida Bar ID 52883
                                    ryan@shipplawoffice.com
                                    Law Office of Ryan S. Shipp, PLLC
                                    814 Lantana Road, Suite 1
                                    Lake Worth, Florida 33462
                                    Tel: (561) 699-0399

                                    Steven L. Woodrow
                                    (swoodrow@woodrowpeluso.com)*
                                    Patrick H. Peluso
                                    (ppeluso@woodrowpeluso.com)*
                                    Woodrow & Peluso, LLC

3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675